**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

---

| | |
|---|---|
| ) | |
| ) | |
| UNITED STATES OF AMERICA,                              ) | |
| ) | |
| Plaintiff,                              ) | |
| ) | |
| v.                              ) | Civil Action |
| ) | |
| THOMAS E. LIPAR; LIPAR GROUP, INC.;   ) | |
| LGI LAND, LLC.; LGI GP, LLC; LGI          ) | |
| DEVELOPMENT; JESSE VALERIANO,      ) | |
| JTI CONTRACTORS, INC.; AND JTI          ) | |
| CONSTRUCTION, INC.,                              ) | |
| ) | |
| Defendants.                              ) | |
| ) | |

---

**UNITED STATES' COMPLAINT**

The United States of America ("United States"), through its undersigned attorneys, by the

authority of the Attorney General, and at the request of the Administrator of the United States

Environmental Protection Agency ("EPA"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action commenced under Sections 309(b) and (d) of the Clean

Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d).  The United States seeks injunctive relief

and civil penalties against Defendants (a) Thomas E. Lipar; Lipar Group Inc.; LGI Land, LLC;

LGI GP, LLC; LGI Development, Inc. (collectively the "Lipar Entities"); and (b) Jesse

Valeriano; JTI Contractors, Inc.; and JTI Construction, Inc. (collectively the "JTI Entities")

(Lipar Entities and JTI Entities collectively referred to as "Defendants") for violations of CWA

Sections 301 and 404, 33 U.S.C. §§ 1311 and 1344, for the discharge of pollutants into waters of

1

the United States near the town of Spring, Texas in Montgomery County, without permits issued pursuant to CWA Section 404, 33 U.S.C. § 1344.  The United States also seeks civil penalties against the Lipar Entities for failure to comply with administrative orders, in violation of CWA Section 309(d), 33 U.S.C. § 1319(d).

2.        In this action, the United States seeks to:  (1) enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) require Defendants to comply with the requirements of the CWA and its implementing regulations and with the terms of any permit issued under CWA Section 404 for the discharge of dredged and/or fill material; (3) require Defendants, at their own expense and at the direction of EPA and the United State Army Corps of Engineers, to restore and/or mitigate the damages caused by their unlawful activities; and (4) require Defendants to pay civil penalties as provided in CWA Section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over the subject matter of this action pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.        Venue is proper in the United States District Court for the Southern District of Texas pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, the subject property is located in this District, and the cause of action alleged herein arose in this District.

5.        Notice of the commencement of this action has been provided to the State of Texas pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6.      The Plaintiff in this action is the United States of America.  Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and 33 U.S.C. § 1366.

7.      Defendant Thomas E. Lipar is a private individual, the Chief Executive Officer of the Lipar Group, Inc., the sole member of LGI Land, LLC, and a member of LGI GP, LLC.  Mr. Lipar conducts business in the Southern District of Texas, and his business address is 19221 I-45 South, Ste 200, Houston, Texas 77385.  Upon information and belief, he resides at 161 Grogans Point Rd, Spring, TX 77380-4605.

8.      Defendant Lipar Group, Inc. is a corporation organized under the law of the State of Texas which conducts business in the Southern District of Texas and has a business address of 19221 I-45 South, Houston, Texas 77385.

9.      Defendant LGI Land, LLC is a limited liability company organized under the law of the State of Texas that conducts business in the Southern District of Texas and has a business address of 19221 I-45 South, Ste 320, Conroe, Texas 77385.

10.      Defendant LGI GP, LLC is a limited liability company organized under the law of the State of Texas that conducts business in the Southern District of Texas and has a business address of 19221 I-45 South, Suite 320, Conroe, TX 77385.

11.      Upon information and belief, Defendant LGI Development is a partnership whose partners, upon information and belief, consist of the Lipar Group, Inc., LGI Land, LLC, and others.  LGI Development conducts business in the Southern District of Texas, and has a business address of 19221 I-45 South, Suite 320, Conroe, TX 77385.

12.     Defendant Jesse Valeriano is a private individual and the President and Treasurer of JTI Contractors, Inc., and JTI Construction, Inc.  Mr. Valeriano resides and conducts business in the Southern District of Texas.  Upon information and belief, he resides at 8612 Wallisville Road, Houston, TX 77029.

13.     Defendant JTI Contractors, Inc. is a corporation organized under the law of the State of Texas that conducts business in the Southern District of Texas, and has a business address of P.O. Box 24511, Houston, TX  77229-4511.

14.     Defendant JTI Construction, Inc. is a corporation organized under the law of the State of Texas that conducts business in the Southern District of Texas, and has a business address of P.O. Box 24790, Houston, TX  77229.

15.     Each Defendant is a "person" within the meaning of CWA Section 502(5), 33 U.S.C. § 1362(5).

16.     At all times relevant to this Complaint, one or more of the Lipar Entities either owned or otherwise controlled the real property that is the subject of this Complaint and/or one or more of the Defendants and/or persons working on their behalf otherwise controlled the activities that occurred on such property.  The real property at issue comprises generally:  (A) an approximately 2,883-acre residential development located south of Riley Fuzzel Road, near Spring, Montgomery County, Texas, and commonly known as Benders Landing Estates ("Benders Landing Estates Site"); and (B) a piece of property located near the Lake Windcrest Subdivision south of FM 1488 near Magnolia, Montgomery County, Texas ("Lake Windcrest Site").  These Sites are generally depicted, respectively, in Exhibits 1 and 2, hereto.

4

17.     Upon information and belief, one of more of Jesse Valeriano, JTI Contractors, Inc. and JTI Construction, Inc., currently own or otherwise control the real property at the Lake Windcrest Site.

## STATUTORY BACKGROUND

18.     CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, *inter alia*, a permit issued pursuant to CWA Section 404, 33 U.S.C. § 1344.

19.     CWA Section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

20.     CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

21.     CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand, dirt, and biological materials.

22.     CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

23.     33 C.F.R. §§ 328.3(a)(1), (2), (5) and (7), and 40 C.F.R. § 232.2, define "waters of the United States" to include:  (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) all interstate waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters or their tributaries.

24.     33 C.F.R. § 328.3(b) and 40 C.F.R. § 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

25.     CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged," including any pipe, ditch, channel, conduit, or discrete fissure.

26.     CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual [or] corporation."

27.     CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA Section 301(a).

28.     CWA Section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA Section 301(a) or who violates any valid order issued by EPA.

## GENERAL ALLEGATIONS

29.     Starting on or about January 2005 through the present, one or more of the Defendants and/or persons acting on their behalf, discharged dredged or fill material into waters of the United States without a permit under CWA Section 404 at various areas at the Benders Landing Estates Site and the Lake Windcrest Site.  Each area of violation is identified in a separate Count below.

30.    The dredged or fill material that one or more of the Defendants and/or persons acting on their behalf caused to be discharged includes, among other things, dirt, spoil, rock and sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

31.    One or more of the Defendants and/or persons acting on their behalf used mechanized land-clearing and earth-moving equipment to accomplish the discharges described in Paragraph 29.  These pieces of equipment constitute "point sources" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

32.    Defendants did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, for the discharges of dredged or fill material into waters of the United States described in Paragraph 29 as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344.

33.    On information and belief, at the time of each unauthorized discharge of dredged or fill material into waters of the United States, one or more of the Lipar Entities owned, leased, or otherwise controlled the property on which the discharges occurred.

34.    One or more of the Defendants conducted, contracted for, supervised and/or otherwise controlled the activities described in Paragraph 29.

35.    Defendants are "persons" within the meaning of CWA Section 502(5), 33 U.S.C. § 1362(5).

36.    Defendants have violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged or fill material into waters of the United

States, including wetlands, at areas identified below in the Benders Landing Estates and Lake Windcrest Sites.

37.     Each day that such material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

38.     Spring Creek in Texas flows into the West Fork San Jacinto River to form the confluence of Lake Houston.

39.     Water from Lake Houston flows into the San Jacinto River, which in turn flows to Galveston Bay, which is an embayment of the Gulf of Mexico.

40.     The West Fork San Jacinto River, Spring Creek, Lake Houston, the San Jacinto River, Galveston Bay, and the Gulf of Mexico all are "waters of the United States" under 33 C.F.R. § 328.3(a) and 40 C.F.R. § 232.2.

41.     The tributaries and wetlands described in Counts One through Seven below at the Benders Landing Estates Site flow either directly or through other tributaries into the West Fork San Jacinto River or Spring Creek.

42.     The wetland described in Count Eight below flows into one or more of three unnamed tributaries (identified as Tributaries 1 – 3 on Exhibit 2), which converge to form another unnamed tributary (identified as Tributary 4 on Exhibit 2) that flows through Lake Windcrest and into Dry Creek.  Dry Creek flows into Spring Creek, which flows into the West Fork San Jacinto River.  Tributaries 1-4, Dry Creek, Lake Windcrest, Spring Creek, and the West Fork San Jacinto River are "water[s] of the United States" under 33 C.F.R. § 328.3(a) and 40 C.F.R. § 232.2.

8

**COUNT ONE:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "A" OF THE BENDERS LANDING ESTATES SITE**

43.    The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 42.

44.    On one or more occasions between at least June 2006 and December 2007, upon information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary and wetland(s) in the area identified as "Area A" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

45.    The unnamed tributary (identified as Tributary 1 on Exhibit 1) and wetland(s) in Area A are or were "waters of the United States" and "navigable waters" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

46.    Tributary 1 in Area A has or had an ordinary high water mark and flows or flowed at least seasonally to Tantrough Gully.

47.    Tantrough Gully is a water body with an ordinary high water mark that flows most of the year to the West Fork San Jacinto River.

48.    The West Fork San Jacinto River is a traditionally navigable water with an ordinary high water mark that flows perennially to Lake Houston.

49.    The impacted wetland(s) in Area A has or had a continuous surface connection to Tributary 1.

50.    The impacted wetland(s) in Area A, Tributary 1, and Tantrough Gully are part of a larger watershed of similarly-situated waters and exhibit flow characteristics and functions

that, when considered alone or in combination with those similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of the West Fork San Jacinto River.

51.     The impacted wetland(s) in Area A, Tributary 1, and Tantrough Gully, *inter alia*, provide or provided flood control and/or flood storage; provide or provided pollutant trapping and/or filtering functions; provide or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of the West Fork San Jacinto River and other waters within that watershed.

52.     Defendants' activities at Area A of the Benders Landing Estates Site resulted in the filling of approximately 1.2 acres of wetlands and the filling of or other impact to approximately 2,900 linear feet of Tributary 1.

53.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), in the wetland(s) and Tributary 1 in Area A of the Benders Landing Estates Site.

54.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, the wetland(s) and Tributary 1 in Area A in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT TWO: UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "B" OF THE BENDERS LANDING ESTATES SITE

55.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 54.

56.     On one or more occasions between at least December 2007 and January 2009, upon information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into wetlands in the area identified as "Area B" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

57.     The wetlands in Area B are or were "waters of the United States" and "navigable waters" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

58.     The impacted wetlands in Area B directly have or had a continuous surface connection to Tributary 1 and/or Tantrough Gully.

59.     Tributary 1 in Area B is a water body with an ordinary high water mark that flows at least seasonally to Tantrough Gully.

60.     The impacted wetlands in Area B, Tributary 1, and Tantrough Gully are part of a larger watershed of similarly-situated waters and exhibit flow characteristics and functions that, when considered alone or in combination with those similarly situated waters, significantly affect the chemical, physical, and biological integrity of the West Fork San Jacinto River.

61.     The impacted wetlands Area B, Tributary 1, and Tantrough Gully, *inter alia*, provide or provided flood control and/or flood storage; provide or provided pollutant trapping and/or filtering functions; provide or provided nutrient transport; and/or maintain or maintained

11

the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of the West Fork San Jacinto River and other waters in that watershed.

62.     Defendants' activities at Area B of the Benders Landing Estates Site resulted in the filling of approximately 11.9 acres of wetlands.

63.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a) in Area B at the Benders Landing Estates Site

64.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, the wetlands in Area B in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT THREE:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "C" OF THE BENDERS LANDING ESTATES SITE

65.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 64.

66.     On one or more occasions between at least June 2006 and December 2007, on information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary and wetlands in the area identified as "Area C" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

67.     The unnamed tributary (identified as Tributary 2 on Exhibit 1) and wetlands in Area C are or were "waters of the United States" and "navigable waters" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

68.     Tributary 2 in Area C has or had an ordinary high water mark and flows or flowed at least seasonally to the West Fork San Jacinto River.

69.     The impacted wetland(s) in Area C have or had a continuous surface connection to Tributary 2.

70.     The impacted wetlands and Tributary 2 in Area C are part of a larger watershed of similarly-situated waters and exhibit flow characteristics and functions that, when considered alone or in combination with those similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of the West Fork San Jacinto River.

71.     The impacted wetlands and Tributary 2 in Area C, *inter alia*, provide or provided flood control and/or flood storage; provide or provided pollutant trapping and/or filtering functions; provide or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of the West Fork San Jacinto River and other waters in that watershed.

72.     Defendants' activities at Area C of the Benders Landing Estates Site resulted in the filling of approximately 23.5 acres of wetlands and the filling of or other impact to approximately 1,525 linear feet of Tributary 2.

73.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), in the wetlands and Tributary 2 in Area C the Benders Landing Estates Site.

74.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, the wetlands and Tributary 2 in Area C in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT FOUR:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "D" OF THE BENDERS LANDING ESTATES SITE

75.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 74.

76.     On one or more occasions between at least January 2003 and July 2004, upon information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary in the area identified as "Area D" on Exhibit 2 at the Benders Landing Estates Site in Montgomery County, Texas.

77.     The unnamed tributary (identified as Tributary 4 on Exhibit 1) in Area D is or was a "water of the United States" and "navigable water" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

14

78.     Tributary 4 in Area D has or had an ordinary high water mark and flows or flowed at least seasonally to Spring Creek.

79.     Spring Creek is a traditionally navigable water with an ordinary high water mark that flows perennially to the West Fork San Jacinto River.

80.     Tributary 4 in Area D is part of a larger watershed of similarly-situated waters, and exhibits flow characteristics and functions that, when considered alone or in combination with those similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of Spring Creek.

81.     Tributary 4 in Area D, *inter alia*, provides or provided flood control and/or flood storage; provides or provided pollutant trapping and/or filtering functions; provides or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of Spring Creek and other waters in that watershed.

82.     Defendants' activities at Area D of the Benders Landing Estates Site resulted in the filling of or impact to approximately 875 linear feet of Tributary 4.

83.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in Tributary 4 in Area D in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT FIVE:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "E" OF THE BENDERS LANDING ESTATES SITE

84.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 83.

15

85.     On one or more occasions between at least January 2005 and August 2005, upon information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary in the area identified as "Area E" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

86.     The unnamed tributary (identified as Tributary 5 on Exhibit 1) in Area E is or was a "water of the United States" and "navigable water" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

87.     Tributary 5 in Area E has or had an ordinary high water mark and flows or flowed at least seasonally to Spring Creek.

88.     Tributary 5 in Area E is part of a larger watershed of similarly-situated waters, and exhibits flow characteristics and functions that, when considered alone or in combination with those similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of Spring Creek.

89.     Tributary 5 in Area E, *inter alia*, provides or provided flood control and/or flood storage; provides or provided pollutant trapping and/or filtering functions; provides or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of Spring Creek and other waters in that watershed.

90.     Defendants' activities at Area E of the Benders Landing Estates Site resulted in the filling of or impact to approximately 1,980 linear feet of Tributary 5.

16

91.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), in Area E at the Benders Landing Estates Site.

92.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, Tributary 5 in Area E in violation of CWA Section 301, 33 U.S.C. § 1311.

**COUNT SIX:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "F" OF THE BENDERS LANDING ESTATES SITE**

93.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 92.

94.     On one or more occasions between at least June 2005 and August 2006, upon information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary in the area identified as "Area F" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

95.     The unnamed tributary (identified as Tributary 6 on Exhibit 1) in Area F is or was a "water of the United States" and "navigable water" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

96.     Tributary 6 in Area F has or had an ordinary high water mark and flows or flowed at least seasonally to Spring Creek .

97.     Area F is part of a larger watershed of contiguous, similarly-situated waters, and exhibits flow characteristics and functions that, when considered alone or in combination with those similarly situated waters in the region, significantly affect the chemical, physical, and biological integrity of Spring Creek.

98.     Tributary 6 in Area F, *inter alia*, provides or provided flood control and/or flood storage; provides or provided pollutant trapping and/or filtering functions; provides or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of Spring Creek and other waters in that watershed.

99.     Defendants' activities at Area F of the Benders Landing Estates Site resulted in the filling of or impact to approximately 3,090 linear feet of Tributary 6.

100.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), in Area F at the Benders Landing Estates Site.

101.     Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, Tributary 6 in Area F in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT SEVEN:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO AREA "G" OF THE BENDERS LANDING ESTATES SITE

102.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 101.

18

103.    On one or more occasions between December 2007 to the present, one or more Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into an unnamed tributary and wetland in the area identified as "Area G" on Exhibit 1 at the Benders Landing Estates Site in Montgomery County, Texas.

104.    The unnamed tributary (identified as Tributary 3 on Exhibit 1) and wetlands in Area G are or were "waters of the United States" and "navigable waters" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2.

105.    Tributary 3 in Area G has or had an ordinary high water mark and flows or flowed at least seasonally to another unnamed tributary identified as Tributary 7 on Exhibit 1. Tributary 7 has an ordinary high water mark and flows at least seasonally to the West Fork San Jacinto River.

106.    The impacted wetland in Area G has or had a continuous surface connection to Tributary 3.

107.    The impacted wetland in Area G, Tributary 3, and Tributary 7, are part of a larger watershed of similarly-situated waters in and exhibits flow characteristics and functions that, when considered alone or in combination with those similarly-situated waters in the region, significantly affect the chemical, physical, and biological integrity of the West Fork San Jacinto River.

108.    The impacted wetland in Area G, Tributary 3, and Tributary 7, *inter alia*, provide or provided flood control and/or flood storage; provide or provided pollutant trapping and/or filtering functions; provide or provided nutrient transport; and/or maintain or maintained the

19

chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of the West Fork San Jacinto River and other waters in that watershed.

109.    Defendants' activities at Area G of the Benders Landing Estates Site resulted in the filling of approximately 12.7 acres of wetlands and the filling of or other impact to approximately 2,900 linear feet of Tributary 3.

110.    Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), in the wetlands and Tributary 3 in Area G at the Benders Landing Estates Site.

111.    Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, the wetlands and Tributary 3 in Area G in violation of CWA Section 301, 33 U.S.C. § 1311.

## COUNT EIGHT:  UNAUTHORIZED DISCHARGES OF DREDGED AND/OR FILL MATERIAL INTO THE LAKE WINDCREST SITE

112.    The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 42, 48, and 79.

113.    On one or more occasions between July 2005 and November 2005, on information and belief, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, discharged dredged and/or fill material from point sources into wetland(s) in the Lake Windcrest Site illustrated on Exhibit 2.

114.    The wetland at the Lake Windcrest Site is or was a "water[] of the United States" and "navigable water[s]" under CWA Section 502(7), 33 U.S.C. § 1362(7), and the regulations promulgated thereunder, 40 C.F.R. § 232.2 and 33 C.F.R. § 328.3.

115.    The impacted wetland at the Lake Windcrest Site has or had a continuous surface connection to one or more of Tributaries 1-3 that flow together to form Tributary 4.  Tributary 4, in turn, flows to Dry Creek.

116.    Tributaries 1-4 are water bodies that flow or flowed at least seasonally into Lake Windcrest.

117.    Dry Creek is a water body with an ordinary high water mark that flows at least seasonally to Spring Creek.

118.    The impacted wetland at the Lake Windcrest Site is part of a larger watershed of contiguous, similarly-situated waters, and exhibits flow characteristics and functions that, when considered alone or in combination with those similarly situated in the region, significantly affect the chemical, physical, and biological integrity of Tributaries 1-4, Lake Windcrest, Dry Creek and/or Spring Creek.

119.    The impacted wetland at the Lake Windcrest Site, *inter alia*, provides or provided flood control and/or flood storage; provides or provided pollutant trapping and/or filtering functions; provide or provided nutrient transport; and/or maintain or maintained the chemical composition of the water, natural discharge patterns, and water quality functions that contributed to the aquatic and wildlife habitat of the watershed of Spring Creek.

120.    Defendants' activities the Lake Windcrest Site resulted in the filling of approximately 4.1 acres of wetlands.

21

121.    Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty for each day of violation of CWA Section 301(a), 33 U.S.C. § 1311(a), at the Lake Windcrest Site.

122.    Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into, and/or to allow dredged or fill material to remain in, the wetland at the Lake Windcrest Site in violation of CWA Section 301, 33 U.S.C. § 1311.

### COUNT NINE:  VIOLATION OF MARCH 7, 2007 ORDER

123.    The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 111.

124.    On or about March 7, 2007, EPA issued a cease and desist order pursuant to CWA Section 309(a), 33 U.S.C. 1319(a) ("March 2007 Order"), EPA Docket Number 06-2007-2714, stating that Defendant LGI Development had discharged dredged and/or fill material into several "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404, 33 U.S.C. § 1344.

125.    The March 2007 Order directed LGI Development to cease all unpermitted activities in "waters of the United States" at the Benders Landing Estates Site.

126.    In violation of CWA Section 309(d), 33 U.S.C. § 1319(d), Defendant LGI Development failed to comply with the March 2007 Order by continuing to discharge and/or directing others to discharge dredged and/or fill material into "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404, 33 U.S.C. § 1344.

22

127.    Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants LGI Development and its constituent partners are liable for a civil penalty for each day of violation of the March 7, 2007 order.

## COUNT TEN:  VIOLATION OF DECEMBER 19, 2007 ORDER

128.    The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 111.

129.    On or about December 19, 2007, EPA issued an administrative order pursuant to CWA Section 309(a), 33 U.S.C. 1319(a), ("December 2007 Order"), EPA Docket Number CWA-06-2008-2701, which stated that LGI Development had continued to discharged dredged and/or fill material into additional "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404.

130.    The December 2007 Order directed Defendant LGI Development, among other things, to cease all discharges of dredged and/or fill material into "waters of the United States" without a CWA Section 404 permit, and to immediately stabilize all disturbed areas at the Benders Landing Estates Site by implementing best management practices that would prevent soil erosion and sedimentation.

131.    In violation of CWA Section 309(d), 33 U.S.C. § 1319(d), Defendant LGI Development failed to comply with the December 2007 Order by continuing to discharge and/or directing others to discharge dredged and/or fill material into "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404, 33 U.S.C. § 1344, and by failing to implement best management practices for existing violations.

23

132.    Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendant LGI Development and its constituent partners are liable for a civil penalty for each day of violation of the December 19, 2007 order.

<u>**COUNT ELEVEN:  VIOLATION OF JUNE 16, 2008 ORDER**</u>

133.    The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 111.

134.    On or about June 16, 2008, EPA issued an administrative order pursuant to CWA Section 309(a), 33 U.S.C. 1319(a) ("June 2008 Order"), EPA Docket Number CWA 06-2008-2723, which stated that LGI Development had continued to discharged dredged and/or fill material into additional "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404.

135.    The June 2008 Order directed LGI Development to cease all discharges of dredged and/or fill material into "waters of the United States" without a CWA Section 404 permit, and to immediately implement best management practices that would stabilize all disturbed areas at the Benders Landing Estates Site and prevent soil erosion and sedimentation.

136.    In violation of CWA Section 309(d), 33 U.S.C. § 1319(d), Defendant LGI Development failed to comply with the June 2008 Order by continuing to discharge and/or directing others to discharge dredged and/or fill material into "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404, 33 U.S.C. § 1344, and by failing to implement best management practices for existing violations.

137.     Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendant LGI Development and its constituent partners are liable for a civil penalty for each day of violation of the June 16, 2008 order.

### COUNT TWELVE:  VIOLATION OF FEBRUARY 4, 2010 ORDER

138.     The United States repeats and re-alleges the allegations set forth in Paragraphs 1 through 111.

139.     On or about February 4, 2010, EPA issued an administrative order pursuant to CWA Section 309(a), 33 U.S.C. § 1319(a) ("February 2010 Order"), EPA Docket Number CWA 06-2010-2714, which stated that the Lipar Entities had continued to discharged dredged and/or fill material into additional "waters of the United States" at the Benders Landing Estates Site without a permit under CWA Section 404.

140.     The February 2010 Order directed the Lipar Group, Inc., LGI Land, LLC, and Thomas Lipar to cease all discharges of dredged and/or fill material into "waters of the United States" without a CWA Section 404 permit, and to immediately stabilize all disturbed areas at the Benders Landing Estates Site and prevent soil erosion and sedimentation by implementing best management practices.

141.     In violation of CWA Section 309(d), 33 U.S.C. 1319(d), Defendants Lipar Group, Inc., LGI Land, LLC, and Thomas Lipar have failed to comply with the February 2010 Order by failing to stabilize all disturbed areas at the Benders Landing Estates Site and prevent soil erosion and sedimentation by implementing best management practices.

142.     Pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants Lipar Group, Inc., LGI Land, LLC,

and/or Thomas Lipar are liable for a civil penalty for each day of violation of the February 10, 2010 order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1.      Permanently enjoin Defendants from discharging or causing the discharge of dredged or fill material or other pollutants into any water of the United States at the Benders Landing Estates and the Lake Windcrest Sites except in compliance with the CWA;

2.      Order Defendants, or any combination thereof, to undertake measures, at Defendants' own expense and at the direction of EPA and/or the United States Army Corps of Engineers, to restore waters of the United States at the Benders Landing Estates and Lake Windcrest Sites and to conduct on-site and off-site mitigation for unauthorized impacts to waters of the United States, as appropriate;

3.      Order Defendants to pay civil penalties, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), for each day of each violation of CWA Section 301(a) and of EPA's administrative orders;

4.      Award the United States costs and disbursements in this action; and

5.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Dated:  May 26, 2010                     _/s/ Heather E. Gange_
HEATHER E. GANGE, Attorney in charge
MICHELE L. WALTER, Attorney in charge
United States Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
Tel:  (202) 514-2795 (Walter)
Tel:  (202) 514-4206 (Gange)
Fax: (202) 514-8865
Michele.Walter@usdoj.gov
Heather.Gange@usdoj.gov

Keith Wyatt
Chief, Civil Division
United States Attorney's Office
P.O. Box 61129
Houston, Texas 77208
Tel:  (713) 567-9000
Fax:  (713) 718-3303
Keith.Wyatt@usdoj.gov

OF COUNSEL:

SHANNON VALLANCE
Assistant Regional Counsel
United States Environmental Protection Agency
Region VI
1445 Ross Ave., Suite 1200
Dallas, TX 75202-2733

JAMES VINCH
United States Environmental Protection Agency
Office of Compliance and Enforcement Assurance
1200 Pennsylvania, Ave., N.W.
Washington, DC  20460